# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIM. NOS. 2:17-CR-52-DBH-01 |
| ) | AND 2:11-CR-127-DBH-01 |
| ANTHONY ALMEIDA, ) | |
| ) | |
| DEFENDANT ) | |

## DECISION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE

I sentenced Anthony Almeida III in a CARES Act video proceeding on July 29, 2020, to 130 months in prison for a drug trafficking conspiracy with two years concurrent for violating his supervised release on a previous counterfeit currency conviction.[1] That was a sentence that both the defendant and the government proposed and agreed to. The 130 months was a substantial reduction from the Guideline range of 262 to 327 months. In granting his motion to have his sentencing by videoconference during the pandemic, I noted:

> Mr. Almeida does not want any further delay in his sentencing for the following reasons, which I quote from his motion:
> i) according to the CDC Almeida is a member of a class of persons subject to a higher risk of severe illness or death should he be exposed to COVID-19;
> ii) he has the potential to receive more appropriate medical care while in the custody of the Federal BOP;
> iii) while he is facing a mandatory minimum sentence of 10 years, based on his risk factors and the length of time he has served in custody, he is a candidate to immediately apply for compassionate release from BOP.

---

[1] The Second Revised Presentence Report stated that Almeida had been detained in federal custody since July 21, 2017, so it is likely that the supervised release violation part of the prison sentence has been satisfied.

> For these and other reasons enumerated during the conference of Counsel, Mr. Almeida respectfully requests that his sentence hearing be expedited and scheduled via video.

Order on Def.'s Mot. for Sentencing Via Video, July 23, 2020, No. 2:17-cr-52-DBH-1 (ECF No. 272) (footnotes omitted).  I said then in that Order, "I make clear to counsel now and will make clear to Mr. Almeida at sentencing that I have no influence over the BOP's compassionate release program, and at the conference of counsel I expressed some skepticism whether his application would be successful." Id. at n.5.  I repeated that warning directly to Almeida at sentencing.

Almeida is now incarcerated at FCI Berlin (he had requested assignment to FMC Devens, a medical center) and is not getting the medical treatment he hoped for.  He has also been unsuccessful in getting compassionate release from BOP.  So he has moved this court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the basis of extraordinary and compelling reasons.  Counsel has been appointed to represent him.  Almeida currently is projected for release October 13, 2026, and eligible for home detention April 13, 2026.  (ECF No. 290-18).  The BOP reports that FCI Berlin currently has 2 inmates and 3 staff positive for COVID-19 and 7 inmates and 0 staff who have recovered.  See BOP, COVID-19 Cases, Federal Bureau of Prisons (last updated Dec. 31, 2020), https://www.bop.gov/coronavirus/.[2]

As amended by the First Step Act, the compassionate release provision allows a judge, without a BOP motion, to reduce a sentence where "extraordinary

---

[2] I have considered all the filings the parties have made, including the recent health care records and the status of COVID-19 at FCI Berlin.  (ECF No. 295).

2

and compelling reasons warrant such a reduction."³ I have previously ruled that the Sentencing Commission's Guideline policy statement on this provision, 1B1.13 cmt. n.1(A), which the Commission has not changed to reflect the First Step Act,⁴ "provides helpful guidance" but "is not ultimately conclusive given the statutory change." United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019), aff'd, No. 19-1785 (1st Cir. July 23, 2020) ("the district court did consider other relevant circumstances not specifically enumerated in the guidelines").⁵ The Second, Fourth, Sixth, and Seventh Circuits have gone further and ruled that the Guideline policy statement applies only to motions brought by the Director of the Bureau of Prisons, not to motions for relief brought by defendants, and that nothing limits judges' discretion in considering "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 235-37 (2d Cir. 2020); accord United States v. McCoy, 981 F.3d 271, 281-83 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098, 1108-11 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020).

I proceed therefore to assess whether Almeida has presented "extraordinary and compelling reasons" for me to order his early release. Although the government challenges the seriousness of Almeida's medical

---

³ Almeida has met the requirement that 30 days pass after the Warden receives his request. 18 U.S.C. § 3582(c)(1)(A).
⁴ The Commission currently lacks a quorum to amend the Guidelines.
⁵ I note that the government seems to believe that the Fox appeal is still pending, see Gov't's Resp. at 8 n.1 (ECF No. 292), and chooses to ignore the growing number of circuit decisions that say the Guideline policy statement is inapplicable to motions brought by prisoners.

3

conditions, I find that collectively, in the presence of the coronavirus pandemic, they meet the "extraordinary and compelling reasons" standard of 18 U.S.C. § 3582(c)(1)(A). Setting aside a history of heart murmur, Almeida suffers from asthma, hypertension, and Graves' disease with resulting hyperthyroidism.

But seriousness of the medical conditions is *not* the end of the analysis in determining whether a motion for compassionate release should be granted. According to the statute, I must also consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The following factors from the statute are pertinent here: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

### *The nature and circumstances of the offense.*

The offenses for which I sentenced Almeida were a significant drug trafficking conspiracy involving heroin, methamphetamine, and cocaine, with a 10-year mandatory sentence at a minimum, and for engaging in that crime and moving out of state without permission while he was on supervised release for his previous counterfeit currency conviction. Almeida's Guideline range was 262 to 327 months for the drug conspiracy. In short, the offense was extremely serious.

### *The history and characteristics of the defendant and protecting the public from further crimes of the defendant.*

At Almeida's sentencing, a number of family and community members expressed their support for him; Almeida himself showed significant efforts to improve while he was in presentence detention. But I cannot ignore that Almeida has a significant criminal history (Category VI) starting at age 18 in 2001 and continuing until the current offenses. His serious violations of supervised release following imprisonment by this court attest to the risk he poses. I want to believe that he finally has learned to control his criminal impulses, but his risk of recidivism is high. I say that without meaning to impugn his good intentions at this stage; but good intentions are not enough to erase the history.

### *Avoiding Unwarranted Sentence Disparities.*

As he did at sentencing when he advocated the 130-month sentence I imposed, Almeida points to the sentences co-conspirators received. But he adds the new factor that his supplier in the drug conspiracy, originally sentenced in Connecticut to 48 months in prison, has been released by his sentencing judge on compassionate release grounds (due to asthma) after seven months. In that case, the government did not object to the motion for compassionate release. See United States v. Echevarria, Nos. 3:17-cr-44 (MPS), 3:06-cr-269 (MPS), 2020 WL 2113604 (D. Conn. May 4, 2020), attached to Almeida's motion (ECF No. 290-6).

It is exceedingly difficult to compare defendants' sentences given the number of variations that are possible in history, recidivism, deterrence needs, danger to the public, etc. That difficulty only increases in comparing the bases for compassionate release. For the reasons I have explained, I find that Almeida

5

remains at serious risk of continued criminal conduct. The compassionate release of his supplier does not change my evaluation.

In his initial pro se motion for compassionate release, Almeida argued in addition that he suffered a sentencing disparity because the government later offered a two-level Guideline variance in its sentencing recommendation to defendants who agreed to conduct sentencing via video. Mot. for Compassionate Release at 12-13 (ECF No. 285). However, the government does not offer that proposed reduction in every case, and Almeida's sentence was already greatly reduced, by agreement, from his Guideline range.

I do not find unwarranted sentence disparity.

***The need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence.***

Given what I have recounted, and considering the additional factors of offense seriousness, respect for the law, just punishment, and adequate deterrence, I cannot justify releasing Almeida at this early stage of his imprisonment.

The motion for compassionate release is **DENIED**.

**SO ORDERED.**

**DATED THIS 4TH DAY OF JANUARY, 2021**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**